**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00296-RSE**

**HEATHER R. P.**                                                                                                  **PLAINTIFF**

VS.

**MARTIN O'MALLEY,**[1]
*Commissioner of Social Security*                                                               **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Commissioner of Social Security denied Heather R. P.'s[2] ("Claimant's") application for disability insurance and supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 15). The Commissioner has responded in a Fact and Law Summary. (DN 19). Claimant has filed a reply brief. (DN 20). The parties have consented, under 28 U.S.C. § 63(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13).

I. Background

Claimant applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI on October 23, 2020. (Transcript, hereinafter "Tr.," 208-14, 215-18). In her applications, Claimant alleged disability beginning on June 18, 2020, due to back pain,

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.
[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced by first name and last initial in opinions issued.

back issues, hip issues on both sides, and hip pain. (Tr. 231). Her applications were denied on initial review and again on reconsideration. (Tr. 88-98, 103-14, 117-22, 123-28). Administrative Law Judge Maribeth McMahon ("ALJ McMahon") conducted a telephonic hearing in Paducah, Kentucky on August 12, 2022. (Tr. 45-87). Claimant attended the hearing by telephone with her attorney.[3] (Tr. 47). An impartial vocational expert also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. Claimant lives with her three children, ages twelve, fifteen, and eighteen. (Tr. 75). Between February and May of 2022, she fostered nine children at various times but was only able to provide temporary care for them because she "didn't really have the space to permanently house one." (Tr. 76-77). She used to work as a Certified Nursing Assistant and warehouse line runner. (Tr. 70). Claimant stated that "[t]he thing that most interferes [with her ability to work] is the pain that radiates into [her] back down [her] left leg from standing or sitting or walking too much[.]" (Tr. 57). Claimant described her "constant" back pain as a "sharp, stabbing, burning" sensation which causes her back and left leg to "lock up" before she falls. (Tr. 58). When taking her medications, she rated the daily severity of her pain as "about a nine" on a ten-point scale. (Tr. 60). Claimant stated that a side effect of her medications is drowsiness. (Tr. 61). She estimated that she cannot sit or stand for longer than ten minutes and cannot walk for longer than ten to twenty minutes. (Tr. 58, 62). Claimant testified that she must readjust positions every fifteen to twenty minutes. (Tr. 63). She reported that her back pain has progressively worsened since June of 2020. (Tr. 60). Due to her pain, her errands take longer to perform, and she struggles to carry everyday items. (Tr. 58, 61). Claimant testified that she requires help with grooming and dressing if she is experiencing pain. (Tr. 67). Claimant also reported severe migraines, (Tr. 63), bilateral shoulder pain when reaching overhead or outward,

---

[3] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 154).

(Tr. 65-66), hand pain, (Tr. 66-67), foot pain caused by bunions, (Tr. 68), and respiratory issues (Tr. 68-69).

ALJ McMahon issued an unfavorable decision on October 5, 2022. (Tr. 24-38). She applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since June 18, 2020, the alleged onset date. (Tr. 29). Second, Claimant has the following severe impairments: degenerative disc disease with radiation to her left lower extremity, degenerative joint disease of the bilateral upper extremities with left shoulder surgery, bunions, and obesity. (Tr. 29-30). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 31). Between the third and fourth steps, ALJ McMahon found Claimant has the residual functional capacity ("RFC") to perform "light work" with the following non-exertional limitations:

> [S]he can lift/carry 20 pounds occasionally and 10 pounds frequently. She can frequently reach with the bilateral upper extremities; pushing/pulling is unlimited otherwise. She can stand, sit, and walk each up to 30 minutes at a time, for a total of up to 6 hours each in an 8-hour workday, with normal breaks. She can never climb ladders, ropes, or scaffolds; climb ramps and stairs frequently; stooping, kneeling, crouching, and crawling frequently. She should avoid concentrated exposure to vibrations, fumes, odors, dusts, gases, and poor ventilation. Additionally, she can never be exposed to unprotected heights or dangerous machinery.

(Tr. 32). Fourth, Claimant cannot perform any past relevant work. (Tr. 36). Fifth and finally, after considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*). Based on this evaluation, ALJ McMahon concluded Claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2020 through the date of her decision. (Tr. 37).

Claimant appealed ALJ Wilkerson's decision. (Tr. 205-08). On April 26, 2023, the Appeals Council denied Claimant's request for review of ALJ McMahon's decision, rendering her decision the final decision of the Commissioner. (Tr. 1-7). Claimant appealed to this Court and now seeks remand of the proceedings. (DN 1).

## II. Standard of Review

Administrative Law Judges' ("ALJs'") determinations regarding social security disability follow a five-step sequential process. *Sherry Z. v. Kijakazi*, No. 3:22-CV-00547-CRS, 2023 U.S. Dist. LEXIS 234006, at *5 (W.D. Ky. Dec. 28, 2023) (citing *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008); 20 C.F.R. §§ 404.1520(b), 416.920(b)). At steps one through four, the claimant bears the burden of proof regarding the existence and severity of impairments that prevent past work performance. *Sherry Z.*, 2023 U.S. Dist. LEXIS 234006, at *5. If the analysis reaches step five, the burden shifts to the ALJ to show that other jobs exist in the national economy. *Id.* Judicial review of an ALJ's decision is limited to "whether there is substantial evidence in the record to support the [ALJ's] findings" and "whether the correct legal standards were applied." *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *see also* 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if her findings are "supported by substantial evidence, even if that evidence could support a contrary decision." *Elam*, 348 F.3d at 125. The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotations omitted) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek*, 587 U.S. at 103 (citations omitted).

## III. Conclusions of Law

Claimant challenges ALJ McMahon's decision with two claims of error. First, Claimant asserts that ALJ McMahon erred by failing to properly evaluate the opinions of Thad Jackson, M.D. ("Dr. Jackson") and APRN Christa Dowell ("APRN Dowell"). Second, Claimant states that ALJ McMahon erred by failing to comply with 20 C.F.R. §§ 404.1529 and 416.929 in her analysis of Claimant's subjective allegations.

### A.  ALJ McMahon's Evaluation of Dr. Jackson and APRN Dowell's Opinions

Claimant asserts that ALJ McMahon failed to adequately articulate how she weighed the consistency and supportability factors when evaluating Dr. Jackson and APRN Dowell's medical opinions. (DN 15-1, at PageID # 1424-28). Claimant argues that ALJ McMahon's error was prejudicial because, if she had adopted Dr. Jackson and APRN Dowell's restrictions, the vocational expert's testimony would not have yielded jobs for Claimant, and she would have been found to be disabled. (*Id.* at PageID # 1427, 1429). In response, the Commissioner argues that ALJ McMahon properly evaluated Dr. Jackson and APRN Dowell's opinions under the applicable regulations. (DN 19, at PageID # 1447-49).

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed her applications after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, when evaluating medical opinions, an ALJ cannot give deference or evidentiary weight to any medical opinion, regardless of its source. 20 C.F.R. § 416.920c(a). Instead, an ALJ must evaluate medical opinions on their persuasiveness by referencing five factors: 1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* § 416.920(c)(1)-(5). The new regulations require ALJs to explain how they considered the consistency and supportability factors in their determination, but they are not required to explain their consideration of the other factors. *Id.* § 416.920(b)(1)-(2).

The consistency factor evaluates whether the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. § 404.1520(c)(2) ("The more consistent a medical opinion(s) . . . is with evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). On the other hand, the supportability factor evaluates how well "the objective medical evidence and supporting explanation presented by a medical source" supports the medical opinion. *Id.* § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."). The Sixth Circuit has not set a specific standard for determining if an ALJ has properly explained how medical opinions and the consistency and supportability factors were considered. *Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00672-CHL, 2024 U.S. Dist. LEXIS 49191, at *16 (W.D. Ky. Mar. 19, 2024).

### 1. Dr. Jackson's Opinion

Claimant visited Dr. Jackson, her neurosurgeon, on August 25, 2020 and June 2, 2022. (Tr. 1253-54, 1261-64). At her first visit, Dr. Jackson noted that Claimant "would likely benefit from a lighter form of work" because of the pain she was experiencing. (Tr. 1264). During her second visit, Dr. Jackson reviewed Claimant's MRI results and found degenerative disc disease on her lumbar spine from L5 to S1. (Tr. 1253). He noted Claimant's report that she could not work due to pain in her lower back. (*Id.*). Dr. Jackson recommended "against bending/twisting at the waist[,] [l]ifting greater than 10 lbs[,] and any jarring activities." (*Id.*). In her decision, ALJ McMahon found Dr. Jackson's opinion "unpersuasive." (Tr. 36).

While Claimant concedes that ALJ McMahon "addressed the factor of supportability," she insists that "the factor of consistency was not addressed." (DN 15-1, at PageID # 1426).

6

Specifically, Claimant contends that ALJ McMahon did not "articulate any consideration of the consistency between Dr. Jackson's opinion and other medical and nonmedical sources." (*Id.* at PageID # 1425). The Commissioner responds that ALJ McMahon did evaluate Dr. Jackson's opinion for consistency and points to ALJ McMahon's discussion of the inconsistencies between Dr. Jackson's opinion and APRN Katy Marcum's findings. (DN 19, at PageID # 1449). The Commissioner further argues that Dr. Jackson's restrictions are inconsistent with the findings of the state agency medical consultants who opined that Claimant could perform light work, stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds. (*Id.* at PageID # 1450).

Claimant's allegation that ALJ McMahon did not address the consistency of Dr. Jackson's opinion is unmeritorious. Although ALJ McMahon did not explicitly discuss how she analyzed the consistency of Dr. Jackson's opinion, she addressed how his proposed restrictions were inconsistent with other evidence in the record. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision).

ALJ McMahon asserted that "the medical evidence did not support a more limited restriction upon [Claimant's] ability to perform basic work functions" than those restrictions included in her RFC analysis. (Tr. 34). ALJ McMahon then discussed Dr. Jackson's opinion, finding that his recommendations appeared to be "based on the claimant's subjective complaints" because they were "inconsistent" with "contemporaneous treatment findings." (Tr. 36). ALJ McMahon noted the following inconsistencies in the record: "June 2022 records reflected a smooth and regular gait without the use of an assistive device, 5/5 strength throughout, and grossly intact sensation[.]"[4] (Tr. 36 (citing tr. 1276)). ALJ McMahon also highlighted reports from other

---

[4] Claimant argues that "the ALJ relied on evidence which preceded the worsening of [her] condition" and "[t]he Commissioner regurgitates the ALJ's assertions without addressing [Claimant's] specific examples." (DN 20, at

providers noting that Claimant could still perform her activities of daily living. (Tr. 36 (citing tr. 1275-76, 1317)). These findings contradict the lifting and bending restrictions imposed by Dr. Jackson in his opinion. Thus, despite Claimant's assertions, ALJ McMahon adequately addressed the consistency of Dr. Jackson's opinion with the overall medical record. ALJ McMahon's conclusion that Dr. Jackson's opinion was unpersuasive is supported by substantial evidence in the record and complies with the pertinent regulations.

2. APRN Dowell's Opinion

APRN Dowell is Claimant's primary care provider with whom Claimant's medical records reflect she had been treating since at least June of 2020. (Tr. 417). In her Residual Functional Capacity Questionnaire, APRN Dowell diagnosed Claimant with a herniated disc in the lumbar spine and degenerative disc disease. (Tr. 1248). APRN Dowell opined that Claimant could only sit, stand, and walk for ten minutes at a time, and found that Claimant could not sit, stand, or walk for even an hour during an eight-hour workday. (Tr. 1248-49). She estimated that Claimant could occasionally lift or carry items under ten pounds and anticipated that Claimant would miss work more than three times per month. (Tr. 1249). APRN Dowell also reported that Claimant experienced side effects of decreased reflexes and fatigue from her medications. (Tr. 1248). In her decision, ALJ McMahon found APRN Dowell's opinion "unpersuasive." (Tr. 35).

Claimant asserts that, although ALJ McMahon "superficially addressed both factors" in her analysis, her rationale did not explain how the evidence in the record led her to find APRN Dowell's opinion unpersuasive. (DN 15-1, at PageID # 1428). Claimant argues that the evidence

---

PageID # 1460). In her Fact and Law Summary, Claimant relied heavily on treatment notes from APRN Katy Marcum as support for her contention that her conditions had worsened. (DN 15-1, at PageID # 1425). However, in her decision, ALJ McMahon highlighted evidence from APRN Marcum's treatment notes to demonstrate that Dr. Jackson's opinion was inconsistent with the medical record. (*See* tr. 36 (citing tr. 1276)). Claimant's reference to other evidence in APRN Marcum's records is merely an attempt to point to contrary evidence in the record, which is insufficient to support a remand of ALJ McMahon's decision.

relied on by ALJ McMahon for her consistency and supportability factors does not "accurately show[]" that APRN Dowell's opinion is unsupported by or inconsistent with the record. (*Id.* at PageID # 1429). Claimant maintains that ALJ McMahon's failure to adopt APRN Dowell's opinion as it relates to Claimant's expected absenteeism was not harmless because the vocational expert testified that "all jobs would be eliminated" if Claimant were to be absent from work as often as two days per month. (*Id.*). The Commissioner, in response, argues that ALJ McMahon "appropriately noted inconsistencies in the opined limitations," found that the restrictions were not supported or consistent with the overall record, and determined that the opinion was unpersuasive. (DN 19, at PageID # 1447-1448).

Claimant's argument that ALJ McMahon did not properly evaluate APRN Dowell's opinion also fails. In addressing the consistency of APRN Dowell's opinion, ALJ McMahon found that her walking and standing limitations were inconsistent with treatment records noting that Claimant "ambulated normally" with "a smooth, unimpaired, and/or regular gait." (Tr. 35 (citing tr. 413, 430, 692, 854, 967, 1011)). Additionally, ALJ McMahon found that APRN Dowell's report of the side effects of Claimant's medications, including decreased reflexes and fatigue, conflicted with providers who noted "normal sensation, and [that] the claimant denied fatigue."[5] (Tr. 35 (citing tr. 416, 692, 968, 1092, 1219, 1262, 1266, 1275, 1317)). Finally, ALJ McMahon noted that APRN Dowell "failed to give reaching restrictions despite a history of surgery on both shoulders with treatment notes reflecting symptoms of tenderness and weakness with a diminished range of motion."[6] (Tr. 35 (citing tr. 807, 818, 902, 1212, 1214, 1216)). Thus, ALJ McMahon identified the

---

[5] Evidence cited by ALJ McMahon included observations from APRN Dowell's own treatment notes. (*See* tr. 416 (June 26, 2020 visit in which APRN Dowell reported "normal sensation of left foot and leg and right foot and leg")).
[6] At Claimant's February 23, 2022 visit, APRN Dowell noted Claimant's shoulder surgery from 2018. (Tr. 902).

specific portions of APRN Dowell's opinion that she found to be inconsistent with the overall medical record.

In addressing the supportability of APRN Dowell's opinion, ALJ McMahon highlighted her report that Claimant "did not require an assistive device." (Tr. 35 (citing tr. 1250)). This finding undermines APRN Dowell's opined limitations, particularly her "extreme standing and walking restrictions" and, relatedly, her expected absenteeism. (*Id.*). Furthermore, ALJ McMahon's identification of the inconsistencies between APRN Dowell's opinion and her own treatment notes contributes to her supportability analysis. *See Ebony S. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1043, 2023 U.S. Dist. LEXIS 201637, at *17 (S.D. Ohio Nov. 9, 2023) (construing supportability analysis from ALJ's comparison of medical opinion with the nurse practitioner's own treatment notes and objective medical evidence). Thus, ALJ McMahon properly explained which of APRN Dowell's own findings did not support her opinion.

ALJ McMahon set forth her rationale on the consistency and supportability of APRN Dowell's opinion. As such, ALJ McMahon's conclusion that APRN Dowell's opinion was unpersuasive is supported by substantial evidence in the record and satisfies the articulation requirement.

### B. ALJ McMahon's Assessment of Claimant's Subjective Allegations

Claimant asserts that ALJ McMahon failed to properly assess Claimant's subjective allegations of "pain radiating down her left leg after sitting too long, an inability to stand longer than ten minutes, and difficulty walking longer than ten to twenty minutes." (DN 15-1, at PageID # 1431). Specifically, Claimant argues that ALJ McMahon "fail[ed] to provide an adequate explanation as to why Plaintiff's allegations" were rejected. (*Id.*). In response, the Commissioner argues that ALJ McMahon "appropriately evaluated the Plaintiff's complaints in the context of the

10

overall record and in concluding that the record failed to support her allegations of disabling limitations." (DN 19, at PageID # 1451).

In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p (2016). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id.* §§ 404.1529(a), 416.929(a). An ALJ must use a two-prong test when examining a claimant's subjective allegations. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). First, she must examine "whether there is objective medical evidence of an underlying medical condition." *Id.* If there is, the ALJ must then examine "(1) whether the objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* When the reported pain and other symptoms suggest an impairment or impairments of greater severity than can be shown by objective medical evidence, the ALJ should consider other information and factors such as daily activities, frequency of treatment, inconsistencies in the evidence, and prescribed medication which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4). When it comes to subjective complaints of pain, the ALJ has the authority to make credibility determinations. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 755 (6th Cir. 2012). The ALJ's findings on the claimant's credibility are highly valued given her responsibility to assess a witness' demeanor and credibility. *Id.*

ALJ McMahon specifically discussed Plaintiff's hearing testimony regarding her alleged back pain and difficulties in standing and walking and found that the Claimant's medically determinable impairments "could be reasonably expected to cause the alleged symptoms." (Tr. 33). However, she noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*).

ALJ McMahon then discussed the record evidence for Claimant's physical impairments. She noted that Claimant suffered from "radiating back pain" and "degenerative disc disease, most prominent at L5-S1." (*Id.* (citing tr. 993, 1226)). ALJ McMahon discussed records indicating that Claimant had "difficulty completing household chores, walking without assistance, working, and exercising." (Tr. 34 (citing tr. 1275)). However, ALJ McMahon found that the medical record "did not support a more limited restriction upon her ability to perform basic work functions." (Tr. 34). ALJ McMahon addressed credibility factors throughout her decision, including the level of treatment Claimant received for her degenerative disc disease. For instance, ALJ McMahon noted that:

> Providers described the degenerative changes of [her] June 2020 lumbar spine imaging as minimal and mild . . . . Her April 2022 back imaging showed no significant canal or neuroforaminal narrowing. Although records indicated that she had difficulty completing household chores, walking without assistance, working, and exercising in June 2022, contemporaneous records reflected a smooth and regular gait without the use of an assistive device, 5/5 strength throughout, and grossly intact sensation.

(Tr. 34 (citing tr. 320, 592, 1228, 1275-76)). ALJ McMahon considered the frequency of Claimant's treatment and her daily activities, noting that Claimant "did not see a neurologist from August 2020 to early 2022[,]" (Tr. 34 (citing tr. 1255)), "could still perform her activities of daily living[,]" (Tr. 34 (citing tr. 1317)), and "helped foster 9 different children at various times

12

throughout 2022" (Tr. 34 (citing Hearing Testimony)). ALJ McMahon also highlighted objective evidence that was inconsistent with Claimant's statements about her back issues, including provider observations that "[s]he was not in acute distress at appointments," (Tr. 34 (citing tr. 409, 440, 692, 744, 907)), and "straight leg raise testing could be negative" (Tr. 34 (citing tr. 692, 1256)).

Because ALJ McMahon discussed the subjective and objective medical evidence at length, weighed Claimant's testimony against the record evidence, and considered Claimant's subjective complaints using the regulatory factors, the Court finds that ALJ McMahon's evaluation of Claimant's subjective allegations is supported by substantial evidence and complies with applicable regulations.

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:     Counsel